UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| ERICK L. GRAHAM, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 2:13-CV-110 |
| § | |
| WILLIAM STEPHENS, § | |
| § | |
| Respondent. § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the McConnell Unit in Beeville, Texas.  Proceeding *pro se*, petitioner filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on April 16, 2013 (D.E. 1).[1]  Petitioner claims that his right to due process was violated in a disciplinary hearing held at the McConnell Unit which resulted in the imposition of punishment.  Respondent filed a motion for summary judgment on July 25, 2013 to which Petitioner responded and filed his own motion for summary judgment (D.E. 9, 12).  As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment be granted and Petitioner's habeas corpus petition be denied.  It is further recommended that Petitioner's motion for summary judgment be denied and that a Certificate of Appealability be denied.

---

[1] Petitioner stated under penalty of perjury that he placed his petition in the prison mail system on April 16, 2013 and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998).

## JURISDICTION

Jurisdiction and venue are proper in this court because petitioner is incarcerated in the Corpus Christi Division of the Southern District of Texas.  28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

Petitioner currently is serving a ten-year sentence for burglary of a habitation (Mot. for Sum. Jmt., Ex. A; D.E. 9-1 at 3).  He does not complain about his holding convictions, but challenges the results of a disciplinary hearing.  In disciplinary case number 20120161044 Petitioner was accused and found guilty of refusing to submit to a random urinalysis to detect controlled substance use (Disp. Hrg. Recs. at 1; D.E. 10-2 at 3).

In the offense report, the charging officer wrote that on February 9, 2013 he ordered Petitioner to submit to an urinalysis test for controlled substances and Petitioner refused (Disp. Hrg. Recs. at 2; D.E. 10-2 at 4).  During the investigation of the offense, Petitioner argued that there was no policy making it mandatory that he submit to urinalysis (Disp. Hrg. Recs. at 3; D.E. 10-2 at 5).  At the hearing, Petitioner stated that he was called out of his cell but not told why.  He used the restroom in the day room and then responded to the call-out.  When he got there and was told he had to submit a urine sample, he could not produce one.  The officer became angry and asked Petitioner if he was refusing to provide a sample and Petitioner said he was not.  Petitioner provided a urine sample the next day and it was negative for controlled substances (Disp. Hrg. Recs. at 4-5; D.E. 10-2 at 6-7).

The charging officer testified via telephone that Petitioner told him there was no policy requiring him to take a urine test and when the officer asked Petitioner if he was refusing to submit a urine sample, Petitioner said he was refusing because policy did not require him to do a urinalysis (*Id.*) Petitioner was found guilty based on the charging officer's report and testimony. He was punished with the loss of forty-five days of commissary and recreation privileges, and made to remain in Line Class 3 (Disp. Hrg. Recs. at 1; D.E. 10-2 at 3). Petitioner did not lose any good time.

Petitioner filed a Step 1 grievance on February 24, 2012 in which he said that he was called out of his cell to the dayroom where he waited for ten or fifteen minutes and then used the restroom. An officer then told him to go to the dining hall for a urinalysis. He said he was unable to urinate and the officer asked him if he was refusing to provide a sample. Petitioner said he was not refusing, but was unable to comply. The next morning he was again called to do a urinalysis. He provided a sample and it was negative for controlled substances. Petitioner complained in the grievance that he was not allowed to call a witness and that TDCJ violated its policies regarding inability to produce a urine sample. Petitioner received a response on March 22, 2012 telling him that his disciplinary case was reviewed and no error was found (Disp. Grv. Recs. at 1-2; D.E. 10-1 at 3-4).

Petitioner filed a Step 2 grievance on March 29, 2012, arguing that evidence was insufficient to support a finding that he had refused to provide a urine sample. He received a response on May 8, 2012 telling him that his disciplinary charge was

appropriate for the offense and the guilty verdict was supported by a preponderance of the evidence (Disp. Grv. Recs. at 3-4; D.E. 10-1 at 5-6).

Petitioner makes the following arguments in this habeas petition: (1) His due process rights were violated when TDCJ failed to follow its own procedures regarding a situation where an inmate is unable to produce a urine sample; (2) He is actually innocent of the charged offense and (3) His eligibility for parole is affected because he is forced to remain in Line Class 3.

## APPLICABLE LAW

### A. Due Process Rights

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. In *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995), the U.S. Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [*Wolff v. McDonnell*, 418 U.S. 539, 94 (1974)] and [*Meachum v. Fano*, 427 U.S. 215 (1976)]. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* (internal citations omitted). The Supreme Court held in *Sandin* that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present

the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin*, 515 U.S. at 486. The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody. *Id.*

To the extent petitioner is complaining about a reduction in line class, he fails to state a basis of relief. Generally, a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and in turn, on the amount of time he is in custody. Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests." *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995)(*citing Meachum v. Fano*, 427 U.S. 215, 229, n. 8 (1976)). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)(citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). *See also Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating).

Petitioner also complains that TDCJ failed to follow its own procedures in regard to situations where inmates are unable to produce a urine sample. He states that TDCJ Administrative Directive AD-03.21 requires that offenders who initially are unable to produce a specimen are to be placed in a confined area free of contaminants and provided eight to sixteen ounces of water to be consumed under observation of the staff. The staff then is supposed to monitor the inmate for up to two hours after he is provided water.

Assuming that this is a correct recitation of the policy, TDCJ's failure to follow it does not rise to the level of a constitutional violation. It is well-established in the Fifth Circuit that "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)(citations omitted). Because Petitioner did not suffer the loss of a liberty interest, he cannot show the violation of a constitutional right. Accordingly, summary judgment should be entered for Respondent, and Petitioner's motion should be denied.

## B. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. Daniel*, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In Petitioner's case, it is recommended that his cause of action be dismissed on the merits. If the district court orders that Petitioner's cause of action be dismissed and Petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because reasonable jurists would not find it debatable that Petitioner did not suffer the loss of a liberty interest following his disciplinary hearing.

## RECOMMENDATION

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (D.E. 9) be granted, and that Petitioner's cause of action for habeas corpus be

denied.  It is further recommended that Petitioner's motion for summary judgment (D.E. 12) be denied, and that any request for a Certificate of Appealability be denied.

Respectfully submitted this 29th day of October, 2013.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).